857 So.2d 943 (2003)
Marion COLLIER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3196.
District Court of Appeal of Florida, Fourth District.
October 15, 2003.
*944 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
*945 PER CURIAM.
Marion Collier was committed to the Department of Children and Families under the Jimmy Ryce Act. See §§ 394.910-394.931, Fla. Stat. (1999). He appeals this commitment on four grounds, but we only need address the Frye issue. See Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
Collier pled guilty to a rape in Virginia in 1981. Subsequent to his release from prison, Collier moved to Florida and was convicted and imprisoned for cocaine possession. As his release from prison was impending in 2000, the State filed a petition to declare Collier a "sexually violent predator." A trial was held to determine whether Collier met the prerequisites necessary to classify him as a "sexually violent predator" and commit him for treatment.
As part of the proceedings, Collier requested, and was granted, a Frye hearing to address the admissibility of the SVR-20 (Sexual Violence Risk-20) assessment tool employed by testifying expert witnesses to evaluate his mental state. Dr. Peter Bursten, a psychologist, testified at the hearing that he used SVR-20 when evaluating Collier but could have evaluated him without using the tool. He additionally admitted that SVR-20 is considered an experimental method of recidivism assessment to a degree, and that some in the psychological science field question its use. As a result, Bursten could not state that SVR-20 had gained general acceptance in the relevant scientific community. Based partly on his use of SVR-20, Bursten indicated that he found Collier was a high-risk to sexually re-offend. The trial court admitted the SVR-20 and related testimony for trial, and at the jury trial, Collier renewed his Frye objection when Bursten and fellow psychologist, Dr. Gregory DeClue, testified regarding the SVR-20.
The standard of review applicable to determinations of Frye admissibility is de novo. Arnold v. State, 807 So.2d 136, 141 (Fla. 4th DCA 2002) (citing Brim v. State, 695 So.2d 268 (Fla.1997)). De novo review by this court entails analyzing the record and prior judicial opinions, for example, "to decide whether the scientific principles and procedures relied upon to create such evidence are generally accepted by a relevant scientific community both at the time of the trial and today." Brim v. State, 779 So.2d 427, 428 (Fla. 2d DCA 2000) (citing Hadden v. State, 690 So.2d 573, 578 (Fla.1997)).
In addition, the burden of proving the general acceptance of a particular technique and its application to the case at hand lies with the proponent of the evidence and is a preponderance of the evidence. Ramirez v. State, 651 So.2d 1164, 1168 (Fla.1995). Case precedent establishes that in meeting this burden, the party offering the evidence may not simply rely on the statements of the expert witness who testifies regarding the technique, but must also present cases and other independent evidence demonstrating the scientific acceptability of the technique. See Hadden, 690 So.2d at 578; Flanagan v. State, 625 So.2d 827, 828 (Fla.1993). The testifying expert's pure opinion testimony is not subject to the Frye test, but if that opinion is in discernible part based on a technique that is not Frye admissible, the testimony is also inadmissible. See Hadden, 690 So.2d at 579-581.
In the case at bar, the State offered SVR-20 as a means to establish Collier's likelihood to re-offend. Therefore, the burden to demonstrate the general scientific acceptability of SVR-20 rests with the State. The State failed to meet this burden, because the only evidence proffered at the Frye hearing was the testimony of Dr. Bursten, without additional support from case law or other *946 sources to demonstrate the acceptability of SVR-20. Additionally, even if an expert's testimony alone were sufficient to establish Frye admissibility, Bursten's testimony still would not have met the State's burden because he admitted that the SVR-20 remained in a somewhat experimental phase and that some in the psychological science community questioned its use. Clearly, the State failed to establish SVR-20's general acceptance in the relevant scientific community by a preponderance of the evidence.
Furthermore, Bursten and DeClue's opinion testimony regarding Collier's mental state is also not admissible. This is because both psychologists admitted employing the SVR-20 to reach a diagnosis and the SVR-20 is not Frye admissible. Thus, the trial court erred by admitting the SVR-20 evaluation as well as the experts' testimony because the experts relied on the SVR-20 results.
The State argues that we must consider whether the error, in this case the admission of SVR-20 and related testimony, was harmless. See Hadden, 690 So.2d at 581. Harmless error analysis requires a consideration of whether the evidence erroneously admitted could have influenced the jury's decision. See Goodwin v. State, 751 So.2d 537, 542 (Fla.1999). In the case at bar, the only testimony to the effect that Collier would likely re-offend was that of Bursten and DeClue, and as a result, the jury did not hear any expert testimony establishing Collier's mental state that was untouched by SVR-20. Therefore, it cannot be said with any assurance that the error in admitting the SVR-20-based testimony in the case at bar did not influence the jury. Therefore, we conclude that the error is not harmless. As a result, we reverse Collier's classification and commitment as a "sexually violent predator" under the Jimmy Ryce Act.
Additionally, Collier raised the issue of whether the trial court erred by failing to give a jury instruction as to whether Collier had "serious difficulty controlling his behavior." Although this question is mooted by our decision regarding the SVR-20, and not reached as a consequence, it is fair to note that this question is one which this Court has recently certified to be of great public importance. See Gray v. State, 854 So.2d 287 (Fla. 4th DCA 2003).
REVERSED AND REMANDED for new trial.
GUNTHER and GROSS, JJ., concur.
KLEIN, J., concurs specially with opinion.
KLEIN, J., concurring specially.
I agree with the majority opinion. As to the failure to give the "serious difficulty controlling his behavior" jury instruction, addressed in the last paragraph, I would suggest it be given on retrial. Our supreme court in Westerheide v. State, 831 So.2d 93 (Fla.2002), concluded that the instruction given, although it did not use the words "serious difficulty," conveys this meaning. Id. at 109. There is no downside to the giving of the instruction, and the upside is that it could obviate the need for a new trial if the United States Supreme Court, which adopted the "serious difficulty in controlling behavior" standard of proof in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), ultimately requires such an instruction, or the split decision in Westerheide is overruled by the Florida Supreme Court.