DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLES MICHAEL PHILLIPS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-3530

[October 21, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Dwight L. Geiger, Judge; L.T. Case No. 562011CA001507A.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

HERSCH, RICHARD, Associate Judge.

Phillips appeals from an order finding him to be a sexually violent predator (SVP) under the Involuntary Civil Commitment of Sexually Violent Predators Act, sections 394.910-.931, Florida Statutes (2010) (the "Act"), and committing him to the Florida Civil Commitment Center. Phillips raises no issues contesting the sufficiency of the evidence or the procedures utilized at trial in reaching such a commitment. Rather, Phillips argues only that he was not lawfully confined at the time of initiation of the SVP proceedings and that a lack of jurisdiction precludes the commitment. Because we find that Phillips was lawfully under "total confinement" as the result of Chapter 916 proceedings, we affirm the trial court's order committing Phillips.

*Facts and Procedural History*

In 1995, Phillips was charged with one count of burglary while armed with a deadly weapon and two counts of sexual battery while armed with a deadly weapon. He forced his way into the home of a 21-year-old woman at knife point and forcibly raped her. A search of his residence revealed

handwritten notes indicating surveillance of women in the area, including notations concerning physical attributes, time of day, and detailed descriptions of women's residences. At trial, the jury rejected his defense of insanity and found him guilty as charged. Phillips received a sentence of 154 months of imprisonment to be followed by 20 years of probation.

Released from prison in June of 2004, it did not take long for Phillips to violate his probation. In July 2004, he showed symptoms of psychosis and was taken into police custody by way of the Baker Act. It was alleged that he violated his probation by failing to take medications prescribed as part of his mental health treatment plan. In December 2004, he admitted to the violation and the trial court modified his probation to include community control sanctions.

Four months later, a second affidavit for violation of probation alleged that Phillips had absconded from his community control by leaving his residence and discarding his electronic monitor. The trial court ordered evaluations for both competency and sanity. The appointed doctors found Phillips competent to participate in proceedings, but insane at the time of the violation.

On January 30, 2006, the trial court, pursuant to Florida Rule of Criminal Procedure 3.217 and the stipulation of the parties, entered an order finding Phillips not guilty by reason of insanity of the probation violation. Pursuant to Rule 3.218 and section 916.15, Florida Statutes (2004), Phillips was committed to the Department of Children and Families ("DCF") for hospitalization and treatment. In its January 30, 2006 order, the court made all requisite findings, retained jurisdiction, and directed that Phillips not be discharged or released from commitment by DCF without further order of the court.[1]

After a year, DCF informed the court that Phillips no longer met the criteria for continued hospitalization. On March 8, 2007, the trial court entered an order, pursuant to Florida Rule of Criminal Procedure 3.219 and section 916.17, Florida Statutes (2004), placing Phillips on conditional release. This order provided for, among other things, a supervised living

---

[1] In this order the court also terminated Phillips' probation. An order reinstating the probation was entered in March 2007 following Phillips' release from the hospital. Phillips contests the validity of this reinstatement. Since we find the confinement at time of initiation of SVP proceedings was not pursuant to his probation, but rather, was the result of his DCF re-hospitalization, we do not reach the propriety of the 2007 probation reinstatement.

arrangement, monitoring by DCF, continued medication regimen, adherence to the law, continued court-ordered evaluations, and retention of jurisdiction, all pursuant to the statute. Phillips agreed, in writing, to the requirements of the conditional release, including re-hospitalization in the event that his mental health deteriorated.

From April 2007 until July 2008, Phillips was monitored by the mental health court. In July of 2008, Phillips was arrested for aggravated stalking and violation of probation. After meeting the victim online, Phillips barraged her with text messages, e-mails and phone calls, many containing disturbing psychotic ideations. The victim became increasingly concerned, and after one e-mail in which Phillips commented about being accused of raping a minor, the victim discovered Phillips was registered on a sex offender web page. The victim notified the police. Phillips continued to text the victim even after being told by the police to stop. He remained incarcerated until August 2009, when he admitted the violation of probation and once again was placed on conditional release.

Phillips' next violation of probation was for harassing phone calls in February 2010. After meeting a dancer at a club in Port St. Lucie, Phillips began to call her "fifty plus times a day," filling up her voice mail with sexually suggestive songs. After the victim became aware of Phillips' sexual battery convictions and recent incarcerations, she requested that he stop contacting her. Phillips continued his onslaught of harassing calls. During one subsequent conversation Phillips asked: "Do you want to be next?" Interpreting this as a threat of a sexual battery, the victim called police.

Before Phillips could be arrested on the harassing phone call charges, he was arrested in Palm Beach County for resisting arrest without violence and trespass. These two charges, as well as leaving his county of residence without permission, and the harassing phone calls, formed the four violations alleged in a February 10, 2010 affidavit of violation.

Finally alerted that Phillips was not doing well on conditional release,[2] the mental health judge ordered evaluations to determine if re-hospitalization was warranted. On April 6, 2010, Phillips was ordered into DCF custody for involuntary hospitalization and treatment. He remained in DCF custody under this order until commencement of SVP proceedings

---

[2] Phillips had filed a notice of intent to rely on insanity in defense of the third probation violation affidavit.

were initiated by way of the State's Petition for Involuntary Commitment under Chapter 394 in June 2011.

Phillips raised the lawfulness of his confinement at the time of initiation in a Motion to Dismiss Petition for Involuntary Civil Commitment in the SVP action. Pointing out that the January 30, 2006 order committing him to DCF custody also terminated his probation, Phillips alleged a complete absence of jurisdiction over him by the circuit court from that point onward and that, as a result, his subsequent re-hospitalization was void. If his custody with DCF was unlawful, Phillips argued, then the SVP court had no jurisdiction over him and the civil commitment action should be dismissed.

The trial court denied Phillips' motion, finding:

> [T]he Respondent was in the lawful and secure custody of the Department of Children and Families at the time of the filing of the Petition and the issuance of the Order Finding Probable Cause and the issuance of the Warrant for Detention based upon the continuous chain of jurisdiction by the Circuit Court from the outset of the original conviction, sentence, and proper involuntary commitments.

The action proceeded to jury trial and the trial court ultimately entered an order committing Phillips to the Florida Civil Commitment Center as an SVP. As noted earlier, Phillips does not contest the sufficiency of the evidence that led to this finding.

*Analysis*

The Sexual Violent Predator Act applies "to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s.394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future." § 394.925, Fla. Stat. (2004). Thus, it is not required that the current confinement be for a sexually violent offense. *See Hale v. State*, 891 So. 2d 517 (Fla. 2004); *Tabor v. State,* 864 So. 2d 1171 (Fla. 4th DCA 2004).

"'Total confinement' means that the person is currently being held in any physically secure facility being operated or contractually operated for the Department of Corrections, the Department of Juvenile Justice, or the Department of Children and Family Services. . . ." § 394.912(11), Fla. Stat. (2004). However, such confinement must be *lawful* in order for the State to commence commitment proceedings. *See Larimore v. State,* 2 So. 3d

101 (Fla. 2008).  For example, where it is later determined that additional gain-time should have been applied to an offender's prison sentence and that, had appropriate application been made, the inmate would not have been in custody, SVP proceedings may not be initiated.  *Larimore, supra*; *State v. Phillips*, 119 So. 3d 1233 (Fla. 2013); *Morel v. State,* 138 So. 3d 1122 (Fla. 4th DCA 2014) (correction of illegal sentence resulting in expiration of sentence prior to placement of hold and transfer to Commitment Center rendered SVP without jurisdiction to proceed); *Bishop v. Sheldon*, 68 So. 3d 259 (Fla. 2d DCA 2010).

Phillips argues that the SVP court had no jurisdiction over him because his confinement at the time of initiation of proceedings was unlawful. Specifically, he complains that if his probation terminated on January 30, 2006, any subsequent confinement would be unlawful.  Phillips overlooks that his confinement with DCF at the time of initiation in June 2011 was not a result of his probation, but rather, the result of a Chapter 916 commitment.

Florida Rule of Criminal Procedure 3.217(b) provides, in salient part:

> When a person is found not guilty of the offense or is found not to be in violation of probation or community control by reason of insanity, if the court then determines that the defendant presently meets the criteria set forth by law, the court shall commit the defendant to the Department of Children and Family Services or shall order outpatient treatment at any other appropriate facility or service, or shall discharge the defendant. . . .

Chapter 916 provides the statutory basis for such commitment.  Section 916.15 addresses this commitment as follows:

> (1)  A defendant who is acquitted of criminal charges because of a finding of not guilty by reason of insanity may be involuntarily committed pursuant to such finding if the defendant is mentally ill and, because of the illness, is manifestly dangerous to himself or herself or others.
>
> (2)  Every defendant acquitted of criminal charges by reason of insanity and found to meet the criteria for involuntary commitment may be committed and treated in accordance with the provisions of this section and the applicable Florida Rules of Criminal Procedure. . . .

5

Importantly, section 916.16, Florida Statutes (2004), allows for the continued jurisdiction of the committing court over the defendant even after hospitalization:

> (1) The committing court shall retain jurisdiction in the case of any defendant hospitalized as incompetent to proceed or because of a finding of not guilty by reason of insanity pursuant to this chapter. No such defendant may be released except by order of the committing court. . . .

> (2) The committing court shall retain jurisdiction in the case of any defendant placed on conditional release. No such defendant may be released from the conditions of release except by order of the committing court.

The January 2006 order declaring Phillips insane at the time of his probation violation not only resolved the pending violation, but also committed Phillips to DCF. Specifically, the court found that Phillips met the criteria of section 916.15(1), Florida Statutes (2004), noting that due to his mental illness:

> (a) The Defendant is manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and without treatment, the Defendant is likely to suffer from neglect or refuse to care for himself and such neglect or refusal poses a real and present threat of substantial harm to the defendant's well-being; and/or

> (b) There is a substantial likelihood that in the near future the Defendant will inflict serious bodily harm on himself or another person, as evidenced by recent behavior causing, attempting or threatening such harm.

Thus, Phillips found his way into the custody of DCF. When it was determined in March 2007 that hospitalization no longer was required, Phillips was placed on conditional release.

Section 916.17, Florida Statutes (2004), governs conditional release and places a defendant under the control of the court. Subsection (1) of 916.17 and Rule 3.219(a) of the Florida Rules of Criminal Procedure direct the court to order a conditional release plan, which shall include provisions for residential care, supervision, outpatient mental health services, and other such services or care that the court finds appropriate.

6

The statute and the rule also direct review by the court if the defendant's condition deteriorates to the point that inpatient care is required. In such a case, the court may order involuntary treatment, including re-hospitalization. § 916.17(2), Fla. Stat. (2004); Fla. R. Crim. P. 3.219(b).

Phillips' case was transferred to the mental health division of the circuit court in March 2007 where his conditional release was monitored. In February 2010, following two separate sexually-charged stalking or harassment of women victims, the mental health judge ordered the appointment and reports of experts to determine whether Phillips met the criteria for return to involuntary hospitalization. The doctors found that Phillips met the criteria of need for care and dangerousness. Based upon these evaluations, the mental health judge committed him to DCF custody on April 6, 2010. It was during this DCF total confinement that SVP proceedings were initiated.

Phillips raises several issues, not presented in the motion to dismiss below, which focus on the fact that the insanity finding was entered for a violation of probation as opposed to the underlying armed burglary and sexual battery charges. These issues are without merit, however, as it is clear that the circuit court's jurisdiction over Phillips existed through chapter 916. As a result, SVP proceedings were initiated during a lawful total confinement and Phillips meets the definition of a sexually violent predator under section 394.912(10). We affirm the trial court's order.

*Affirmed.*

GROSS and DAMOORGIAN, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

7